**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO:**

ALEXEY RECHKUNOV,
*individually and on behalf of all*
*others similarly situated*,                                        **CLASS ACTION**

      **Plaintiff,**                                                              **JURY TRIAL DEMANDED**

v.

DDS MAZAL, LLC D/B/A BAL
HARBOUR SMILES,

      **Defendant.**
_____/

## CLASS ACTION COMPLAINT

Plaintiff Alexey Rechkunov ("Plaintiff") brings this class action against DDS Mazal, LLC

d/b/a Bal Harbour Smiles ("Defendant") and alleges as follows upon personal knowledge as to

Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information

and belief, including investigation conducted by Plaintiff's attorneys.

### NATURE OF THE ACTION

1.      This is a putative class action pursuant to the Telephone Consumer Protection Act (the

"TCPA"), 47 U.S.C. §§ 227, *et seq.* (the "TCPA") and the Florida Telephone Solicitation Act (the

"FTSA"), § 501.059, *Florida Statutes.*

2.      To promote its goods and services, Defendant engages in unsolicited text messaging

and continues to text message consumers after they have opted out of Defendant's solicitations.

Defendant also engages in telemarketing without the required policies and procedures, and training of

its personnel engaged in telemarketing.

1

3.      Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has resulted in the intrusion upon seclusion, invasion of privacy, harassment, aggravation, and disruption of the daily life of Plaintiff and the Class members.  Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the Class, and any other available legal or equitable remedies.

### JURISDICTION AND VENUE

4.      This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the TCPA. Further, this Court has supplemental jurisdiction over Plaintiff's FTSA claim pursuant to 28 U.S.C. § 1367, as the conduct underlying Plaintiff's TCPA claim also forms the basis of Plaintiff's FTSA claim.

5.      This Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant directs, markets, and provides its business activities to this District, and because Defendant's unauthorized marketing scheme was directed by Defendant to consumers in this District.

### PARTIES

6.      Plaintiff is a natural person entitled to bring this action under the TCPA and FTSA, and a citizen and resident of Florida.

7.      Defendant is a Florida limited liability company with its headquarters located in Hollywood, Florida.

8.      Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## **FACTS**

9.      On or about June 14, 2023, Plaintiff requested to opt-out of Defendant's text messages

by replying with a "Stop" instruction as reflected by the following screenshot:



10.      Defendant ignored Plaintiff's request and continued text messaging Plaintiff, including

on or about February 29, 2024, as reflected by the above screenshot and the following screenshots:

3









11.     As demonstrated by the above screenshots, the purpose of Defendant's text messages was to solicit the sale of consumer goods and/or services.

12.     As demonstrated by the above screenshots, the purpose of Defendant's text messages was to advertise, promote, and/or market Defendant's property, goods, and/or services.

13.     As demonstrated by the above screenshots, Defendant does not honor consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's text message solicitations by responding with a "stop" instruction, but Defendant continued to text message Plaintiff.

14.     Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant. The precise details regarding its lack of requisite policies and procedures are solely within Defendant's knowledge and control.

15.     Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not provide training to its personnel engaged in telemarketing. The precise details regarding its lack of training are solely within Defendant's knowledge and control.

16.     Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not maintain a standalone do-not-call list. The precise details regarding its lack of training are solely within Defendant's knowledge and control.

17.     Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made an opt-out request and that request was never processed; it was ignored by Defendant and its employees and Defendant continued to send text messages.

18.     Defendant sent at least two solicitations after Plaintiff's initial opt-out request.

19.     Plaintiff is the regular user of the telephone number that received the above text message solicitations.

20.     Plaintiff utilizes the cellular telephone that received Defendant's texts messages for personal purposes and the number is Plaintiff's residential telephone line.

21.     Upon information and belief, Defendant has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members. Defendant also has access to text message logs showing Plaintiff's and the Class members' inbound opt-out requests.

22.     Defendant is a limited liability company doing business in the state of Florida.

23.     As demonstrated by the above screenshots, Defendant makes or causes to be made text messages to consumers for the purpose of soliciting a sale of consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes.

24.     As demonstrated by the above screenshots, Defendant continued to initiate outbound text messages to Plaintiff after Plaintiff previously communicated to Defendant that they did not want to receive outbound text messages made by or on behalf of Defendant.

25.     As demonstrated by the above screenshots, Defendant's text message solicitations continued fifteen days after Plaintiff had replied to one of Defendant's text message solicitations with the word "stop."

26.     Defendant's text messages caused Plaintiff and the Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

27.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

28.     Plaintiff brings this case on behalf of the Classes defined as follows:

> **TCPA Class: All persons within the United States who, within the four years prior to the filing of this lawsuit through the date of class certification, received two or more text messages within any 12-month period, from or on behalf of Defendant, regarding Defendant's goods or services, to said person's residential cellular telephone number, *after* communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**

> **FTSA Class: All persons with Florida addresses who, within the four years prior to the filing this Complaint through the date of class certification, (1) received more than one text message, (2) regarding Defendant's property, goods, or services, (3) fifteen days or more after the person provided notice to Defendant to cease such text messages by replying "stop."**

29.     Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

30.     Defendant and its employees or agents are excluded from the Class.

### NUMEROSITY

31.     Plaintiff does not know the exact number of members of the Classes but is informed and believes that there are at least 50 individuals that fall within each class definition given Defendant's use of automated robotexts to solicit consumers and refusal to honor stop requests.  The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

32.     The exact number and identities of the members of the Classes are unknown at this time and can only be ascertained through discovery.  Identification of members of the Classes is a matter capable of ministerial determination from Defendant's call and text message records.

### COMMON QUESTIONS OF LAW AND FACT

33.     There are numerous questions of law and fact common to members of the Classes which predominate over any questions affecting only individual members of the Classes.  Among the questions of law and fact common to the members of the Classes are:

  a.   Whether Defendant sent text messages to Plaintiff and members of the Classes;

  b.   Whether Defendant continued to send text message solicitations after opt-out requests;

  c.   Whether Defendant failed to honor Plaintiff's and members of the Classes' opt-out requests;

  d.   Whether Defendant implemented the requisite training of personnel under section 64.1200;

  e.   Whether Defendant maintains an internal do-not-call list and instructs its employees on how to use the list;

  f.   Whether Defendant maintains the required policies and procedures under section 64.1200; and

  g.   Whether Defendant is liable for damages, and the amount of such damages.

34.     The common questions in this case are capable of having common answers, and Plaintiff and members of the Classes will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

35.     Plaintiff's claims are typical of the claims of members of the Classes, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

36. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

37. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual members of the Classes prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

38. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

### COUNT I
### VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)
#### (On Behalf of Plaintiff and the TCPA Class)

39. Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1-21 and 26-38 as if fully set forth herein.

40. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) *Recording, disclosure of do-not-call requests*. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

41.     Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

42.     Plaintiff and the TCPA Class members are residential telephone subscribers who received more than one text message made for purposes of telemarketing or solicitation purposes from

Defendant, who has failed to implement the requisite procedures and personnel training as demonstrated by its repeated failure to honor opt-out requests.

43.     Plaintiff and the TCPA Class members made requests to Defendant not to receive texts from Defendant.

44.     Plaintiff and the TCPA Class members revoked any consent they may have provided Defendant by responding with "stop" or similar opt-out instructions.

45.     Defendant continued to text message Plaintiff and the TCPA Class members to harass them into making purchases from Defendant.

46.     Defendant failed to honor Plaintiff's and the TCPA Class members' opt-out requests.

47.     Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

48.     Plaintiff and the TCPA Class members are informed and believe that Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls or text messages.

49.     Plaintiff and the TCPA Class members are informed and believe that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list.

50.     Plaintiff and the TCPA Class members are informed and believe that Defendant does not train its personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list.

51.     The details and specific facts regarding Defendant's failure to maintain the required policies and procedures, as well as personnel training, are solely within Defendant's knowledge and possession.

52. Defendant has violated 47 C.F.R. § 64.1200(d) by failing to honor opt-out requests, failing to maintain the required policies and procedures, and failing to train its personnel engaged in telemarketing.

53. Pursuant to Section 227(c)(5) of the TCPA, Plaintiff and the TCPA Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

54. As a result of Defendant's knowing or willful conduct, Plaintiff and the TCPA Class members are entitled to an award of $1,500.00 in statutory damages per violation.

**COUNT II**
**VIOLATION OF § 501.059, Fla. Stat.**
**(On Behalf of Plaintiff and the FTSA Class)**

55. Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1-13 and 18-38 as if fully set forth herein.

56. Section 501.059(5) of the FTSA provides that:

> A telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission:
> (a) Made by or on behalf of the seller whose goods or services are being offered; or
> (b) Made on behalf of a charitable organization for which a charitable contribution is being solicited.

57. Further, Section 501.059(10)(c) of the FTSA provides that:

> Before the commencement of any action for damages under this section for text message solicitations, the called party must notify the telephone solicitor that the called party does not wish to receive text messages from the telephone solicitor by replying "STOP" to the number from which the called party received text messages from the telephone solicitor. Within 15 days after receipt of such notice, the telephone solicitor shall cease sending text message solicitations to the called party and may not send text messages to the called party thereafter, except that the telephone solicitor may send the called party a text message to

confirm receipt of the notice. The called party may bring an action under this section only if the called party does not consent to receive text messages from the telephone solicitor and the telephone solicitor continues to send text messages to the called party 15 days after the called party provided notice to the telephone solicitor to cease such text messages.

58.     The FTSA defines "telephone solicitor" as: "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call, including, but not limited to, calls made by use of automated dialing or recorded message devices." § 501.059(1)(i), Fla. Stat.

59.     The FTSA defines a "telephonic sales call" as "a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." § 501.059(1)(j), Fla. Stat.

60.     Defendant is a "telephone solicitor," as the term is defined by the FTSA, because it is a business entity doing business in Florida that sends or causes to be sent text messages to consumers that solicit the purchase of Defendant's goods or services.

61.     Plaintiff and the FTSA Class members are consumers with Florida addresses who received more than one text message made for purposes of telemarketing or solicitation purposes from Defendant.

62.     Plaintiff and the FTSA Class members made requests to Defendant not to receive text messages from Defendant by replying to one of Defendant's text message solicitations with the word "stop."

63.     Plaintiff and the FTSA Class members revoked any consent they may have provided Defendant by responding with "stop."

64.     Defendant continued to text message Plaintiff and the FTSA Class members to harass them into making purchases from Defendant.

65.     Specifically, Defendant continued to text message Plaintiff and the FTSA Class members *at least fifteen days after* they had replied to one of Defendant's text message solicitations the word "stop."

66.     Defendant failed to honor Plaintiff's and the FTSA Class members' opt-out requests.

67.     Pursuant to Section 501.059(10)(a) of the FTSA, Plaintiff and the FTSA Class members are entitled to an award of $500.00 in statutory damages, for each and every violation.

68.     As a result of Defendant's knowing or willful conduct, Plaintiff and the FTSA Class members are entitled to an award of $1,500.00 in statutory damages per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a)  An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

a)  An award of statutory damages for Plaintiff and each member of the Classes as applicable under the TCPA and FTSA;

b)  An order declaring that Defendant's actions, as set out above, violate the TCPA and FTSA;

15

c)  An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to their personnel engaged in telemarketing; and (3) maintaining a do-not-call list;

d)  An award of reasonable attorneys' fees and costs, as allowed by applicable law; and

e)  Such further and other relief as the Court deems necessary.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

### DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendant and the calls as alleged herein.

Dated: May 19, 2024

Respectfully Submitted,

/s/ Zane C. Hedaya
**JIBRAEL S. HINDI, ESQ.**
Florida Bar No.: 118259
E-mail: jibrael@jibraellaw.com
**ZANE C. HEDAYA, ESQ.**
Florida Bar No.: 1048640
E-mail: zane@jibraellaw.com
**GERALD D. LANE, JR., ESQ.**
Florida Bar No.: 1044677
E-mail: gerald@jibraellaw.com
The Law Offices of Jibrael S. Hindi
110 SE 6th Street, Suite 1744
Fort Lauderdale, Florida 33301
Phone: 954-907-1136

*COUNSEL FOR PLAINTIFF*

16